Matthew Kevin TAYLOR  *v.*  Kristi Lynn TAYLOR

06-441                                              250 S.W.3d 232

Supreme Court of Arkansas
Opinion delivered February 15, 2007

*Charles Scott Jackson*, for appellant.

No response.

Robert L. Brown, Justice. Appellant Matthew Kevin Taylor appeals from a divorce decree granting appellee Kristi Lynn Taylor a divorce on grounds of eighteen months' separation and adultery. He raises three issues on appeal: (1) the circuit court erred in its award of alimony to Kristi; (2) the circuit court erred in its calculation of his income for child-support payments; and (3) the

circuit court erred in finding that the travel trailer used by him was marital property. We affirm in part and reverse and remand in part.

Kevin Taylor and Kristi Taylor were married on January 16, 1993, and separated on June 1, 2003. The couple has two minor children, Kassandra Hope Taylor, born September 6, 1992, and Koddie Faith Taylor, born April 14, 2000. Kristi is a stay-at-home mother, and both children have been home-schooled by her since approximately 2002. Pursuant to a Mediation Agreement executed by the parties on November 3, 2004, Kristi was granted custody of both children, subject to visitation by Kevin.

In the subsequent divorce decree entered on January 17, 2006, the circuit court found that Kevin earned a sum of $555 per week in take-home pay and ordered him to pay $149 per week in child support to Kristi for the support of their two children. The circuit court further ordered Kevin to pay $110 per week in alimony to Kristi. The circuit court also ruled that Kevin's interest in a travel trailer, in which he and his girlfriend, Michelle Sharp, lived, was marital property. The court ordered that the travel trailer be sold at a public sale together with all other marital property.

## I. Alimony Award

Kevin contends, as his first point on appeal, that the circuit court erred in awarding alimony to Kristi simply because she chooses to educate their children at home. In support of this point, he makes four arguments: (1) that alimony should only be used to equalize marital property in a divorce and should not be used to compensate a parent who chooses to home-school children;[1] (2) that the alimony award to Kristi violates the public interest of this state by not encouraging parents to work to contribute to the financial support of their children; (3) that the circuit court's limiting instructions in the divorce decree for termination of the alimony obligation failed to include remarriage and cohabitation

---

[1] Kevin preserved this issue by first denying Kristi's allegation in her counter-complaint for separate maintenance that she did not have the means to support herself. His counsel later objected to Kristi's home-schooling the children at the temporary hearing held on March 14, 2004, and advised the court that it was Kevin's preference to send the children to public school. His counsel repeated Kevin's preference for a public-school education for his children over home-schooling in a letter to the court following the divorce hearing and before the decree. In that letter, he urged that Kristi find gainful employment.

and, thereby, violated the public policy of this state; and (4) that if this court finds that alimony is appropriate, then this court should remand the case to the circuit court for reconsideration of the length of the alimony obligation. On this last argument, he contends that the alimony obligation should last for four or fewer years.

This court reviews divorce cases *de novo* on the record. *See Farrell v. Farrell*, 365 Ark. 465, 231 S.W.3d 619 (2006). Moreover, we will not reverse a circuit court's finding of fact in a divorce case unless it is clearly erroneous. *See McKay v. McKay*, 340 Ark. 171, 8 S.W.3d 525 (2000). Findings of fact made by the circuit court in a divorce case will be reviewed by this court in the light most favorable to the appellee, and we will defer to the superior position of the circuit court to judge the credibility of witnesses. *See id*. The decision to grant alimony lies within the sound discretion of the circuit court and will not be reversed on appeal, absent an abuse of discretion. *See id*.

Kevin first argues that alimony should not be awarded to compensate a parent who chooses to home-school her children and remain unemployed. Our standard of review for awards of alimony has been summarized by this court:

> The purpose of alimony is to rectify economic imbalances in earning power and standard of living in light of the particular facts in each case. The primary factors that a court should consider in determining whether to award alimony are the financial need of one spouse and the other spouse's ability to pay. The trial court should also consider the following secondary factors: (1) the financial circumstances of both parties; (2) the amount and nature of the income, both current and anticipated, of both parties; (3) the extent and nature of the resources and assets of each of the parties; (4) the earning ability and capacity of both parties. The amount of alimony should not be reduced to a mathematical formula because the need for flexibility outweighs the need for relative certainty.

*Kuchmas v. Kuchmas*, 368 Ark. 43, 45-46, 243 S.W.3d 270, 271-72 (2006) (internal citations omitted). We have added that the circuit court has the discretion to award alimony that is reasonable under the circumstances. *See id*.

The circuit court made the following findings in its letter opinion relating to Kevin's obligation to pay Kristi alimony:

> The counterplaintiff also requests alimony. She is a stay-at-home mother and she is educating the children at home. She is 30 years of age. She is in good health. She has raised a few head of cattle, but appears to have little in the way of marketable skills. 20% of the counterdefendant's take-home pay is $110.00. He is ordered to pay $110.00 per week alimony to the counterplaintiff. In reaching this amount, the Court was guided by Administrative Rule 10, Section III(e). His obligation to pay alimony is limited by statutory law and/or until both children enter public school or the youngest child shall graduate from high school or reaches age 18, whichever event may first occur.

Bolstering the court's findings was Kristi's testimony at the divorce hearing. She testified that she had not worked in twelve years, had never been employed full-time, and had been a stay-at-home mother throughout the entire marriage. She further testified that it had always been an understanding between Kevin and her that she would take care of the home and the children and that Kevin would provide economic support for the family. She added in her testimony that Kevin traveled frequently for work as a welder and that when their first child was young, she and their child traveled with him. Kristi stated that she had home-schooled both of their children for three years at the time of the divorce hearing (April 19, 2005), and she testified that her home-school schedule began at approximately eight in the morning each day and ended at three in the afternoon. She testified that both she and Kevin originally agreed to the idea of home-schooling their children.

In our analysis, we note initially that Kevin's argument misinterprets the circuit court's order when he contends that the court awarded Kristi alimony solely to compensate her for home-schooling the children. That was not the case. It is clear from the testimony presented at the hearing, as well as the circuit court's order, that Kristi's choice to home-school the children was only one consideration by the court. Other factors supporting the alimony award were Kristi's role as a stay-at-home mother during their marriage and afterwards and her lack of any marketable skills or meaningful employment history.

This court and the court of appeals have emphasized in the past that the circuit court is in the best position to view the needs of the parties in connection with an alimony award. *See, e.g., Bailey v. Bailey*, 97 Ark. App. 96, 244 S.W.3d 712 (2006) ($250 per week was an insufficient award of alimony where wife had few assets and

had only worked part time through most of her twenty-four year marriage after the couple's first child was born and was seeking employment, but was not employed, at time of divorce hearing); *Kuchmas, supra* (holding that the circuit court did not abuse its discretion in awarding alimony of $100 per month to the appellee, where appellee had worked throughout the marriage and continued to work during the divorce, but her take-home income was only $500 every two weeks and she had no special skills or training); *Hiett v. Hiett,* 86 Ark. App. 31, 158 S.W.3d 720 (2004) (there was no abuse of discretion in circuit court's award of lifetime alimony to appellee who remained at home during most of her marriage, had not worked outside the home in twenty-five years, had never earned more than minimum wage when she did work, all while appellant was earning over $100,000 per year); *Schumacher v. Schumacher,* 66 Ark. App. 9, 986 S.W.2d 883 (1999) (appellee showed a need for alimony where she had not worked full time in over fourteen years so she could be a stay-at-home mother and could not find a job after the divorce that would keep her in her accustomed standard of living).

We observe, in addition, that other jurisdictions have held that a wife's homemaker status can be a basis for awarding alimony. *See, e.g., Donovan v. Donovan,* 191 S.W.3d 702 (Mo. Ct. App. 2006) (stating that it is well established that a wife's withdrawal from the workforce to be a homemaker is a sound basis for awarding spousal maintenance); *In re Marriage of Olsen,* 705 N.W.2d 312 (Iowa 2005) (alimony was warranted where wife was forty-eight years old at the time of the divorce, had been treated for cancer and other illnesses, had stayed home during most of her twenty-three-year marriage, and could earn only approximately $8 per hour upon entering the job market); *Byers v. Byers,* 910 So. 2d 336 (Fla. Dist. Ct. App. 2005) (alimony was appropriate where wife stayed home during marriage to raise the couple's children and, although she stipulated to an earning potential of $20,000 per year, her husband was earning approximately $147,000 per year); *In re Letendre,* 815 A.2d 938 (N.H. 2002) (there was a need for alimony where wife did not have a high school diploma, had been a stay-at-home mother throughout her marriage, had dyslexia, and had only worked minimum-wage jobs).

Kevin relies on *Donna G.R. v. James B.R.,* 877 So. 2d 1164 (La. Ct. App. 2004), as authority for deciding the same issue as presented in the case at hand. In *Donna G.R.,* the trial court ordered the appellant to pay $750 per month in permanent spousal

support to the appellee, who had not worked during the marriage and was home-schooling their children. The appellant asked that the children be tested to determine if they were at the standard level of education for their ages and requested that the children be enrolled in public school. After hearing evidence on the issue, the trial court determined that the children were doing substandard school work, but because they had been home-schooled for seven years, he was reluctant to order them returned to public school.

The Louisiana Court of Appeals reversed the trial court's ruling that it was in the best interests of the children to allow them to continue to be home-schooled and ordered that the children be enrolled in public school. The appellate court remanded the case so that the trial court could revisit the issue of spousal support because of the reversal. Unlike the present case, the appellant in *Donna G. R.* directly attacked the home-schooling of the children, and evidence was presented that the children were receiving a substandard education. That evidence showed that the appellee, who was teaching the children, had dropped out of school and had received only a GED. Further, the housekeeper testified that the children were undisciplined in their study habits and the amount of time invested by the children in their learning was insufficient. As a final point, there was no evidence in the case that the appellee had complied with the Louisiana statute requiring yearly evaluations of her home-school study program.

In the instant case, however, Kevin has presented no evidence that the children are not receiving an adequate education; nor has he specifically argued to this court that it is not in the best interests of the children to allow Kristi to continue home-schooling them. Though he did object to the home-schooling during the divorce hearing, he had previously agreed to it. We conclude that *Donna G.R.*, *supra*, does not decide the issue presented in this case.

We hold that the trial court did not abuse its discretion in awarding weekly alimony in the amount of $110 in this case. Home-schooling aside, the parties' arrangement throughout their marriage was that Kristi would remain in the home to care for the children and that Kevin would be the breadwinner. As a further point, the court specifically underscored the fact that Kristi had no marketable skills. These facts do not present a case where alimony was awarded solely for the purpose of subsidizing home-schooling of the children by Kristi. Rather, the court's award provided

reasonable support for a homemaker who had little earning potential and who would care for the children until they attained age eighteen or graduated from public high school. We affirm the circuit court on this point.

Kevin's next three arguments relating to alimony do not appear to be preserved for review because they were not raised to the circuit court or decided by that tribunal.[2] This court will not consider arguments that are not raised before the circuit court and ruled upon. *See Harwell-Williams v. Ark. Dep't of Human Servs.*, 368 Ark.183, 243 S.W.3d 898 (2006); *Healthcare Recoveries, Inc. v. Ark. Client Sec. Fund*, 363 Ark. 102, 211 S.W.3d 512 (2005).

Nor will this court consider arguments such as these not raised below or ruled upon in its *de novo* review of the record. In *Thompson v. Fischer*, 364 Ark. 380, 220 S.W.3d 622 (2005), where we conducted a *de novo* review of the record, we said:

> In his first point on appeal, Thompson asserts that his title, acquired by purchasing the property from the State Land Commissioner at a tax sale, defeated, as a matter of law, Fischer's claim of ownership based on adverse possession. However, Thompson failed to raise this argument prior to trial, only mentioning it briefly in a post-trial letter to the court; moreover in neither its findings of fact nor the judgment confirming title did the trial court rule on this argument. An issue must be presented to the trial court at the earliest opportunity in order to preserve it for appeal. It is well settled that this court does not consider arguments raised for the first time on appeal. Where nothing appears in the record reflecting that a particular argument was formulated before the trial court, or that any ruling was given, the appellant has waived review of that issue. Because Thompson did not present and obtain a ruling on his tax-sale argument in the trial court, the issue is not preserved for this court's review.

*Thompson*, 364 Ark. at 382-83, 220 S.W.3d at 624 (citations omitted); *See also McWhorter v. McWhorter*, 346 Ark. 475, 58 S.W.3d 840 (2001).

---

[2] Those arguments are: (1) home-schooling violates the state's public interest by not encouraging parents to seek work to support their children; (2) the court erred by not limiting alimony until remarriage or cohabitation by Kristi; and (3) the circuit court erred by not limiting alimony to four or fewer years.

## II. Child Support

Kevin next claims that the circuit court erred in calculating his weekly income as $555 per week and in awarding Kristi $149 per week in child support. He urges that this is because his income fluctuates from week to week.

This court recently set forth our standard of review for an appeal from a child-support order:

> Our standard of review for an appeal from a child-support order is de novo on the record, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Ward v. Doss*, 361 Ark. 153, 205 S.W.3d 767 (2005). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Akins v. Mofield*, 355 Ark. 215, 132 S.W.3d 760 (2003). We give due deference to the trial court's superior position to determine the credibility of the witnesses and the weight to be given their testimony. *Id.* In a child-support determination, the amount of child support lies within the sound discretion of the trial court, and the lower court's findings will not be reversed absent an abuse of discretion. *Id.* However, a trial court's conclusions of law are given no deference on appeal. *Id.*

*Tucker v. Office of Child Support Enforcement*, 368 Ark. 481, 485-86, 247 S.W.3d 485, 489 (2007).

In determining a reasonable amount of child support, the circuit court shall refer to the most recent version of the family support chart. *See* Ark. Code Ann. § 9-12-312(a)(2) (Repl. 2002); *Hill v. Kelly*, 368 Ark. 200, 243 S.W.3d 886 (2006). There is a rebuttable presumption that the amount contained in the family support chart is the proper amount of child support to be awarded. *See id.* Administrative Order No. 10, which sets forth child-support guidelines and the family support chart, defines income as "any form of payment, periodic or otherwise, due to an individual, regardless of source, including wages, commissions, bonuses, workers' compensation, disability, payments pursuant to a pension or retirement program and interest less proper deductions . . . ." Ark. Sup. Ct. Admin. Order 10, § II. This court has said that "the definition of income included in the Administrative Order 'is intentionally broad and designed to encompass the widest range of sources for the support of minor children.'" *McWhorter v.*

*McWhorter*, 346 Ark. at 481, 58 S.W.3d at 944 (quoting *Davis v. Office of Child Support Enforcement*, 341 Ark. 349, 358, 20 S.W.3d 273, 278 (2000)).

It is undisputed that Kevin's weekly income fluctuates from week to week. Our court of appeals has held that when income fluctuates from month to month, income for child-support purposes should be calculated by averaging monthly earnings. *Delacey v. Delacey*, 85 Ark. App. 419, 155 S.W.3d 701 (2004). The court of appeals explained that "common sense dictates" that averaging a person's fluctuating monthly income over a period of one or two years presents a "truer picture" of the person's income than a calculation based on just one month. *Id.* at 428, 155 S.W.3d at 706. We believe that this approach has merit.

The circuit court found that Kevin's weekly take-home pay averaged $555. To reach this number, the court relied on the $7,276 total yearly gross pay as evidenced by Kevin's paycheck stub dated March 20, 2005. The circuit court subtracted $3,400 in deductions to arrive at a net pay of $3,876 over the course of the seven weeks that Kevin was employed at his current job[3]. The court divided that number by seven for the seven weeks of work and found that Kevin's average weekly take-home pay equaled approximately $555.

The circuit court's finding that Kevin's weekly take-home pay was $555 is not clearly erroneous; nor did the circuit court abuse its discretion in awarding $149 per week in child support to Kristi pursuant to the family support chart. Kevin contends that using only seven weeks of work to calculate an average weekly take-home pay is not sufficient, and yet, he maintains that the circuit court should have adopted his weekly take-home pay figure of $433, which was calculated by averaging income over the course of four weeks from March 6, 2005, through March 27, 2005. The circuit court, however, is in the best position to determine the credibility of the witnesses and to judge the weight of their testimony. *See Tucker, supra.* The circuit court chose to reject Kevin's calculation in favor of averaging income over seven weeks. This was reasonable, and it was within the court's discretion to do so.

---

[3] Kevin began working for A-Lert Construction Services on February 1, 2005.

### III. Marital Property

For his final point, Kevin urges that the circuit court erred in finding that he had any interest in a travel trailer, which he shares with his girlfriend, Michelle Sharp.

This court has explained the standard of review for division-of-property cases:

> On appeal, divorce cases are reviewed de novo. With respect to the division of property, we review the trial court's findings of fact and affirm them unless they are clearly erroneous, or against the pre-ponderance of the evidence; the division of property itself is also reviewed and the same standard applies. A finding is clearly erro-neous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. In order to demonstrate that the trial court's ruling was erroneous, the appellant must show that the trial court abused its discretion by making a decision that was arbitrary or groundless. We give due deference to the chancellor's superior position to determine the credibility of witnesses and the weight to be given their testimony.

*Farrell,* 365 Ark. at 469, 231 S.W.3d at 622 (2006) (internal citations omitted).

Kevin specifically contends that the circuit court erred in declaring the travel trailer to be marital property. He maintains that the ownership of the travel trailer was in dispute and that there was no evidence presented, other than Kristi's testimony that she *thought* he owned it, indicating that he had an ownership interest in the property.

Our divorce code is clear that any property acquired after marriage by either party is marital property unless it is excluded by one of the enumerated seven exceptions. *See* Ark. Code Ann. § 9-12-315(b) (Repl. 2002). None of those exceptions applies in this case. This court has also said that "to the extent that either spouse acquires an enforceable right during the marriage, they acquire marital property." *Farrell,* 365 Ark. at 471, 231 S.W.3d at 623. Further, any property acquired after separation but prior to the entry of a divorce decree is marital property. *See Calvin v. Calvin,* 308 Ark. 109, 823 S.W.3d 843 (1992).

In the instant case, Kevin and Kristi separated in 2003. Kristi testified at the divorce hearing on April 19, 2005, that Kevin had been living with Michelle Sharp for close to a year in the travel

trailer. Kristi also testified that when Kevin travels for work, he takes the trailer with him. A picture of the travel trailer was admitted into evidence, but Kristi admitted that she did not know whether Kevin owned the trailer outright. She also admitted on cross examination that Kevin had not provided her with the registration for the travel trailer and had not told her anything about who owned it. There was no other evidence presented regarding the ownership of the travel trailer.

■ We conclude that the circuit court's finding that Kevin had an ownership interest in the travel trailer was clearly erroneous. There simply was no evidence before the circuit court to support a finding that Kevin had an ownership interest in the travel trailer. Accordingly, this court is convinced that a mistake has been committed. *See Farrell, supra.* We reverse the circuit court on this point.

Affirmed in part. Reversed and remanded in part.