2009 Ark. App. 685

**Troy L. BOUDREAUX, Appellant**

v.

**Ann McNulty BOUDREAUX, Appellee.**

**No. CA 08–1451.**

Court of Appeals of Arkansas.

Oct. 21, 2009.

Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd., North Little Rock, by: Sam Hilburn, Shea DeClerk Halbert, and Traci LaCerra, for appellant.

Cathi Compton; and Wright, Lindsey & Jennings, LLP, Little Rock, by: Troy A. Price, Little Rock, for appellee.

JOHN B. ROBBINS, Judge.

In this divorce case, appellant Troy L. Boudreaux challenges the amounts of child support and spousal support awarded by the trial court, as well as the trial court's order making him responsible for appellee Ann McNulty Boudreaux's attorney's fees and expert witness fees. We agree with appellant's argument that the trial court erred in the methodology it used in calculating his income for purposes of setting child support, and we reverse and remand for a redetermination of Mr. Boudreaux's net monthly income and resulting child-support obligation under the family support chart. Because we remand on the first issue, we also direct the trial court to reconsider the issues of alimony and fees in light of its recalculation of Mr. Boudreaux's income.

The parties were married on November 14, 1996, and have one child together, Grace Ann Boudreaux, born on March 14, 1998. Ms. Boudreaux filed a complaint for divorce on June 29, 2007. Both parties agreed that Ms. Boudreaux would have temporary custody of Grace as well as permanent custody upon divorce. A tem-

porary order was entered on August 30, 2007, wherein the trial court determined Mr. Boudreaux's net monthly income to be $16,222 based on his affidavit of financial means. Pursuant to the family support chart, the trial court ordered Mr. Boudreaux to pay $2433 in monthly temporary child support, and the trial court further ordered him to pay $3244 per month in temporary alimony as well as other expenses. Prior to the final divorce hearing, Ms. Boudreaux filed a motion for contempt against Mr. Boudreaux because he was delinquent in paying his alimony, child support, and other ordered expenses. The trial court did not find Mr. Boudreaux in willful contempt, but did ultimately order him to satisfy the delinquency.

The final hearing was held on March 20, 2008. At the hearing, it was established that Mr. Boudreaux has been working with a company called Advanced Neuromodulation Systems (ANS) for the past several years. Mr. Boudreaux's employment involves selling spinal-cord stimulators to physicians. Prior to 2008, Mr. Boudreaux was an independent contractor for ANS and was compensated solely on a commission basis receiving fifteen percent of his sales. However, according to both Mr. Boudreaux and a company vice president, as of January 1, 2008, Mr. Boudreaux was told he could no longer work as an independent contractor and had to become an ANS employee if he wanted to continue their relationship. As of that date, Mr. Boudreaux became an ANS employee and his compensation structure changed significantly. As an employee under the current plan, Mr. Boudreaux receives a base annual salary of $80,000, plus a five-percent commission on all sales. In addition, there are achievement bonuses that he becomes eligible for if he meets certain quarterly and annual goals. Mr. Boudreaux is also paid a $500 monthly car allowance.

According to Mr. Boudreaux, there has been a substantial decrease in his income beginning in 2008. He attributed this to a number of factors, including being forced to directly work for ANS, losing the business of three doctors constituting about twenty-five percent of his sales, and changes in reimbursement by government programs and private insurance. Mr. Boudreaux produced documentation that his production was down about seventy percent for the months of January, February, and March 2008 as opposed to the same months for 2007. With the help of an accountant, Steve Schroeder, Mr. Boudreaux produced estimates for his annual income for 2008 and corresponding average net monthly income. Based on his actual first quarter sales, Mr. Boudreaux calculated that his average net monthly income will be $6929.66. Mr. Boudreaux also calculated a "best case" scenario where, even if he met all of his quotas, he would earn a net monthly income of $11,892.33. While the record does not include an income tax return for 2007, his returns from 2005 and 2006 reflected monthly net incomes of $15,149 and $17,143. However, Mr. Boudreaux indicated that these figures are not appropriate for calculating his child support because his income has sharply decreased.

Patrick Tompkins, a vice president of ANS, also testified for Mr. Boudreaux. Mr. Tompkins acknowledged that Mr. Boudreaux was given a total sales target of $2,693,000 and quota of $2,746,000 in 2008, which was slightly higher than Mr. Boudreaux's actual 2007 sales of $2,656,490. But despite the optimistic target, Mr. Tompkins testified that he did not expect Mr. Boudreaux to meet it in 2008 for a number of reasons, particularly in light of what he called a "rough first quarter." Mr. Tompkins estimated that Mr. Boudreaux would probably take about a

$100,000 gross pay cut from 2007 to 2008. However, he also acknowledged that the annual quotas were achievable and that it was conceivable that Mr. Boudreaux might make as much money in 2008 as he did in 2007.

Ms. Boudreaux presented the testimony of her accountant, Bruce Engstrom, who made calculations and estimates of Mr. Boudreaux's anticipated 2008 income. Mr. Engstrom noted that Mr. Boudreaux's sales totals from 2003 through 2007 were all in a range between $2,158,380 and $2,698,795, with his 2007 sales totaling $2,656,490. In arriving at Mr. Boudreaux's expected net income for 2008, Mr. Engstrom applied Mr. Boudreaux's 2007 sales total to his current payment structure as an ANS employee. After completing these calculations, Mr. Engstrom concluded that Mr. Boudreaux's anticipated average monthly income over the course of 2008 will be $15,287. Mr. Engstrom also calculated the amount of Mr. Boudreaux's income should he reach his 2008 sales quota of $2,746,000, and testified that in that case appellant's average monthly net income would be $15,775.

In the trial court's letter opinion, the trial court noted the parties' competing projections for Mr. Boudreaux's projected 2008 income, but stated, "All income information submitted regarding Defendant's 2008 earnings are speculation or conjecture." Rather than relying on any of the parties' estimates, the trial court found that pursuant to Administrative Order Number 10, section (III)(c) it was required to calculate appellant's income for child support purposes, as a self-employed payor, based upon his last two tax returns. The trial court noted that no quarterly estimates were provided for the current year.

Mr. Boudreaux's two most recent tax returns were for 2005 and 2006, and re-flected gross annual incomes of $273,818 and $313,056. The net monthly incomes for those years were $15,149 and $17,143. The trial court took the average of these figures and determined that Mr. Boudreaux's net monthly income for child-support purposes is $16,146. Applying that amount to the family support chart, the trial court ordered Mr. Boudreaux to pay child support of $2363 per month commencing April 1, 2008, and continuing until further order of the court. In addition, the divorce decree ordered Mr. Boudreaux to pay $2750.00 in monthly alimony to Ms. Boudreaux over the next five years. Ms. Boudreaux subsequently filed a motion for fees, and the trial court entered an order requiring Mr. Boudreaux to pay $12,000 in attorney's fees and $20,000 in expert-witness fees.

Mr. Boudreaux's first argument on appeal is that the trial court erred in calculating his child-support obligation on income he received as a self-employed payor as opposed to what he currently receives as an employee. We agree.

Our standard of review for an appeal from a child-support order is de novo and we will not reverse a finding of fact by the trial court unless it is clearly erroneous. *Hardy v. Wilbourne,* 370 Ark. 359, 259 S.W.3d 405 (2007). In reviewing the trial court's findings, we give due deference to the court's superior position to determine the credibility of the witnesses and the weight to be accorded their testimony. *Id.* However, a trial court's conclusion of law is given no deference on appeal. *Id.*

Under the circumstances of the present case, we hold that the method used by the trial court in determining Mr. Boudreaux's income was wrong as a matter of law. It is undisputed that although Mr. Boudreaux had been a self-employed

payor in the past, his employment status changed to a direct employee as of January 1, 2008, and has remained such since that time. Thus, the trial court erred in treating him as a self-employed payor under Administrative Order Number 10.

Administrative Order Number 10 sets out the definition of income for child-support purposes, and the manner of calculation of support. In the present case Mr. Boudreaux is both salaried and earns commissions at rates dependent upon his sales volume. Pursuant to section (III)(c) support for a commission worker shall be calculated based on minimum draw plus additional commissions. This court has held that when income fluctuates from month to month, income for child-support purposes should be calculated by averaging monthly earnings. *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007). We explained that common sense dictates that averaging a person's fluctuating monthly income over a period of one or |₇two years presents a truer picture of the person's income than a calculation based on just one month. *Id.* Moreover, in *Kelly v. Kelly*, 341 Ark. 596, 19 S.W.3d 1 (2000), our supreme court held that calculating support from bonus income, like other forms of income, should be based on a proper showing of past earnings and demonstrated future ability.

In the case at bar, Mr. Boudreaux's past earnings do not accurately predict his future earnings because he is no longer self-employed and his compensation structure has changed considerably. However, introduced into evidence were figures showing Mr. Boudreaux's total annual sales for the five years preceding 2008, and his sales for the first few months of 2008. These are relevant in projecting his future sales volume. We do not agree with the appellant that his income should necessarily be based solely on the three months in 2008, as they were particularly low sales totals that do not reflect his potential as demonstrated over a much larger sampling of the past five years. However, to more accurately calculate Mr. Boudreaux's income the trial court must apply his expected future sales figures to his current compensation structure, i.e., his base salary, auto allowance, and projected commissions. Both parties have submitted competing evidence where they purported to do that very thing, and it is for the trial court to weigh that evidence in reaching its determination. We note that even the appellee's accountant's highest estimate for appellant's monthly net income was $15,775, which was lower than the $16,146 used by the trial court. While appellant's future earnings are not calculable with mathematical certainty, the evidence|₈did not support the amount arrived at by the trial court and we reverse and remand for a recalculation with instructions that Mr. Boudreaux not be treated as a self-employed payor.[1]

Mr. Boudreaux's next argument is that the trial court erred in essentially imputing income to him when his change in employment status was reasonable and involuntary. However, we do not agree that the trial court imputed any income to the appellant.

Administrative Order Number 10, section (III)(d) provides that if a payor is working below full capacity the trial court may consider the reasons therefor, and that if earnings are reduced as a matter of choice and not for reasonable cause, the

---

1. We emphasize that our remand is based strictly on a legal error in the trial court's method of computation. We acknowledge the trial court's concern that Mr. Boudreaux was less than forthcoming when testifying about his finances and earning potential, and we do not second-guess the trial court's credibility call in this regard.

trial court may impute income to a payor. But that is not what the trial court did in this case. Rather, the trial court attempted, albeit erroneously, to arrive at appellant's actual earnings by treating him as a self-employed payor and averaging his income from his last two tax returns. The trial court made no finding that Mr. Boudreaux voluntarily and unreasonably changed his employment status to the detriment of his income as appellant suggests it did.

Mr. Boudreaux's third argument is that the trial court erred in awarding an amount of alimony that was based on inflated, nonexistent income. Mr. Boudreaux argues that because the trial court erred in finding he had average monthly income of $16,146.00, when |₉in reality it was nearly $10,000 less than that, it further erred in setting alimony at $2750 per month.

The primary factors in determining alimony are the financial need of one spouse and the other spouse's ability to pay. *Johnson v. Cotton–Johnson*, 88 Ark. App. 67, 194 S.W.3d 806 (2004). In fixing the amount, the trial court considers many factors including the financial circumstances and the amount and nature of the parties' income, both current and anticipated. *Id.* In this case some award of alimony was certainly warranted given that Mr. Boudreaux has far greater present and future earning potential than Ms. Boudreaux. The evidence showed that, while Ms. Boudreaux has a college degree and held gainful employment before the parties married, she has since then essentially been a stay-at-home mom and not held full-time employment. However, because we are reversing and remanding for a recalculation of appellant's income for child-support purposes, we also remand the issue of alimony as it necessarily will be affected by the resolution of the first issue.

Mr. Boudreaux's fourth argument challenges the trial court's decision to make him responsible for Ms. Boudreaux's attorney and expert fees. Appellant acknowledges that the trial court has considerable discretion in awarding attorney's fees, *see Delacey, supra,* but submits that a fee award was improper here where he did not have the ability to pay given his diminished financial circumstances. Because we remand the issue of determining |₁₀Mr. Boudreaux's income and the resulting child-support and possible alimony adjustments, we also order the trial court to reconsider the fee award in light of those findings.

Mr. Boudreaux's remaining argument is that the trial court erred in ordering him to pay child support, alimony, and fees as a way to punish him. He correctly cites *Russell v. Russell,* 275 Ark. 193, 628 S.W.2d 315 (1982), for the proposition that alimony is not awarded as punishment and that the amount of alimony and child support must depend on the particular facts of each case. Our review of the record does not demonstrate that any of the trial court's rulings were motivated by a desire to punish Mr. Boudreaux, and therefore we reject this contention.

Reversed and remanded for further proceedings consistent with this opinion.

MARSHALL, J., agrees.

BAKER, J., concurs.

KAREN R. BAKER, Judge, concurring.

I agree that the trial court's decision in this case must be reversed and remanded. I write separately to emphasize that it is the ultimate task of the trial judge to determine the expendable income of a child-support payor. *See Parker v. Parker,* 97 Ark.App. 298, 248 S.W.3d 523

(2007). In the trial judge's April 18, 2008 letter opinion, he stated that appellant had no credibility in the eyes of the court as to his income or earnings. Specifically, he wrote: "I feel compelled to point out I was left with the distinct impression Defendant was not forthcoming and completely honest with the court on a number of issues, but his income and earnings were the most significant area where a lack of candor affects my decision." The trial court was in the best position to determine the credibility of the witness regarding his income and present earnings, and we defer to the trial court on questions of credibility, *see Taylor v. Taylor,* 369 Ark. 31, 250 S.W.3d 232 (2007). Clearly, the trial court did not believe appellant's testimony regarding his income nor was the trial court required to believe such testimony. Furthermore, I disagree with the majority's holding that the evidence did not support the amount of child support arrived at by the trial court. The trial court had before it only appellant's tax returns for 2005 and 2006, an affidavit of financial means from 2007, and appellant's sales for the first few months of 2008. Based on that evidence, the trial court made a reasonable and logical determination of the amount of appellant's income. As a rule, when the amount of child support is at issue, we will not reverse the trial judge absent an abuse of discretion. *Parker v. Parker,* 97 Ark.App. 298, 248 S.W.3d 523 (2007). I would not disturb the trial court's determination of the amount of child support based on the evidence before the court.

I concur, however, because the testimony was clear that appellant was no longer a self-employed payor under the terms of Administrative Order Number 10, section (III)(c). Again, the trial court set forth in its April 18, 2008 letter opinion the finding that, "For purposes of determining child support and in considering any award of spousal support, Defendant will be treated as a self-employed payor." The evidence showed that as of January 1, 2008, appellant was no longer self-employed, and it was error for the trial court to treat him as such. I must, therefore, concur.