2010 Ark. App. 716

David G. VIGNEAULT, Appellant

v.

Pamela J. VIGNEAULT, Appellee.

No. CA 09–1217.

Court of Appeals of Arkansas.

Oct. 27, 2010.

Rehearing Denied Dec. 8, 2010.

William Benjamin Putman, Taylor Law Partners, LLP, Fayetteville, for appellant.

George Ray Spence, Clark & Spence, Bentonville, for appellee.

COURTNEY HUDSON HENRY, Judge.

Appellant David Vigneault appeals from the decree and amended decree entered by the Circuit Court of Benton County divorcing him from appellee Pam Vigneault. For reversal, appellant challenges the circuit court's award of alimony to appellee, both in the amount and its duration. We find no merit in any of the arguments raised; therefore, we affirm.

The parties in this case married in June 1981 and separated after twenty-seven years. For the majority of their marriage, they resided in Greenfield, Massachusetts, where they raised two sons, who have now reached the age of majority. In November 2007, appellant accepted a position

with Cott Beverage, and the parties relocated to Bentonville. They purchased a home there using $100,000 of the proceeds from the sale of their residence in Greenfield as a down payment. Appellee returned to Massachusetts in March 2008, and on April 8, 2008, appellant filed suit for divorce in the Benton County Circuit Court. Although appellee filed a complaint for divorce in a Massachusetts family court, the Benton County Circuit Court determined that it had jurisdiction in an order dated July 16, 2008.[1]

At the divorce hearing in June 2009, the testimony and evidence revealed that appellant earned a base salary of $231,000 per year and that his net semi-monthly income was $6,763.28. He also accepted a signing bonus that netted $61,000, and he was eligible to receive bonuses based on performance. In addition, appellant was to receive $100,000 in stock from his company over three years' time, and the company paid him an installment of $15,842 for stock in May 2009. Appellant also maintained investment and retirement accounts. He had a 401K account at Cott Beverage valued at $5,300; an IRA at J.P. Morgan consisting of $110,000, and a Roth IRA that fluctuated between $28,000 and $33,000. Appellant also retained a pension from a former employer in the amount of $3,000. Appellee also had $6,000 in an IRA.

During the marriage, appellee worked as a hair stylist and operated her own salon in a building that she rented. As a stylist, she earned an estimated $150 per week, and her business account contained $9,000. Recently, appellee received training as a phlebotomist, and she made $11.38 per hour working at a hospital. Appellee spent three days a week at the salon and worked three days per week at the hospital. According to the testimony, appellant had not wanted appellee to work during the marriage, but appellee preferred working outside of the home.

In terms of debts, the outstanding mortgage on the home in Bentonville was $307,000, and the parties had listed the house for a private sale. Appellant owed $15,000 on his Chevrolet Avalanche truck, and appellee drove a Nissan automobile under a lease that was due to expire in several months. The record also reflects that appellant used his credit cards a great deal. After retiring a large amount of that debt, he owed $200 on his American Express card and approximately $24,000 on two Chase MasterCard accounts. The parties also continued to support their adult children while they attended college. At ages twenty-three and twenty-one, each son had accumulated only enough hours to be considered a sophomore. Appellant paid their tuition, books, rent, and expenses for clothing. The young men worked part-time, but appellant also provided them with a stipend. The parties agreed that it was important for their sons to receive a college education, but appellee believed that they should assume more responsibility for their expenses.

After hearing the evidence, the circuit court ruled from the bench. The court ordered the parties to evenly divide the net proceeds from the sale of the home, but the court gave appellant credit for one-half of the reduction in principal from the date of the divorce to the date of the sale. The circuit court awarded appellee $7,500 for her half of the equity in appellant's truck, which the court offset against appellee's business and checking accounts and the equipment at the salon. The IRAs and other retirement accounts were to be divided equally. The court also awarded appellee one half of the stock payment that

---

1. Appellee has not filed a cross-appeal contesting this ruling.

appellant received from his employer and required appellant to be responsible for the marital debts. The court commented that, as their sons had reached the age of majority, the parties were under no obligation to support them, and the court commended the parties for providing assistance but noted that it was for them to decide whether to continue paying their college expenses. As for alimony, the circuit court found that there was "no question" about appellee's need for alimony and appellant's ability to pay, and the court ordered appellant to pay appellee alimony in the amount of $3,787 per month. In addition, the court directed appellant to pay the sum of $8,634 by March 1 of each year to assist appellee in paying her income taxes.[2] In making this award, the circuit court referenced Administrative Order No. 10 and the child-support chart and considered the parties' respective incomes, the assets they were receiving in the divorce, the length of the marriage, their lifestyle, and appellee's need to secure health insurance. The court also attributed to appellee an income of $1,577 a month as a full-time phlebotomist, considering that occupation as offering her the highest earning potential. The court noted that, with alimony, appellee's monthly income would be in the range of $5,364, which left appellant a monthly income of roughly $10,000. Appellant brings this appeal from the decree and an amended decree setting forth the circuit court's decision.

■ On appeal, appellant argues that the circuit court erred in fixing the amount of alimony and in ordering him to pay the award on a permanent basis. The decision whether to award alimony is a matter that lies within the circuit court's sound discretion, and on appeal, this court will not reverse the circuit court's decision to award alimony absent an abuse of that discretion. *Cole v. Cole*, 89 Ark.App. 134, 201 S.W.3d 21 (2005). An abuse of discretion means discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. *Southwestern Bell Yellow Pages, Inc. v. Pipkin Enters., Inc.*, 359 Ark. 402, 198 S.W.3d 115 (2004). The primary factors in determining alimony are the financial need of one spouse and the other spouse's ability to pay. *Boudreaux v. Boudreaux*, 2009 Ark. App. 685, 373 S.W.3d 329. The circuit court may also consider other factors, including the couple's past standard of living, the earning capacity of each spouse, the resources and assets of each party, and the duration of the marriage. *Rudder v. Hurst*, 2009 Ark. App. 577, 337 S.W.3d 565. The purpose of alimony is to rectify the economic imbalance in earning power and standard of living of the parties to a divorce in light of the particular facts of each case. *Matthews v. Matthews*, 2009 Ark. App. 400, 322 S.W.3d 15.

■ Appellant's lead argument is that, while the circuit court noted that the amount of alimony was "in the middle of two to three dependents" on the child-support chart, the actual chart amount does not comport with the court's award of $3,787 per month. We agree that the court's calculations do not correspond with the child-support chart, but we hold that the court committed no reversible error by applying the chart incorrectly. We have

---

2. Appellant makes no argument on appeal contesting the propriety of this award. Unlike the dissent, we do not artificially inflate the circuit court's alimony award by adding a pro rata portion of this lump-sum payment to the monthly amount of alimony. This annual payment is to defray the cost of income taxes owed by appellee, and thus it does not represent monies to be spent on necessities. We also do not consider the amount of alimony excessive because the award modestly exceeds appellee's claimed expenses.

held that a circuit court is not required to reference the child-support chart in setting alimony where there is no child support at issue. *Jackson v. Jackson,* 2009 Ark. App. 238, 303 S.W.3d 460. Indeed, our courts have never attempted to reduce the amount of alimony to a mathematical formula because the need for flexibility outweighs the corresponding need for relative certainty. *See id.* Instead, the circuit court may make an award of alimony that is reasonable under the circumstances. *Gilliam v. Gilliam,* 2010 Ark. App. 137, 374 S.W.3d 108; *Rudder, supra.* We cannot conclude that the amount of alimony set by the circuit court is unreasonable simply because it does not correspond to a chart amount.

■ Appellant also argues that the circuit court erred in assessing appellee's earning capacity. Appellant maintains that appellee could earn $2,100 a month as a full-time phlebotomist rather than the $1,577 imputed by the circuit court. Further, appellant contends that the court failed to consider that appellee would be eligible for health care benefits if she worked on a full-time basis at the hospital. As we view the evidence, appellee earned $11.38 per hour. Working forty hours a week at that pay rate does not amount to $2,100. Rather, appellee would earn approximately $1,820, which represents gross but not net income. Presumably, the circuit court's calculations included the appropriate deductions to arrive at a net income of $1,577. With regard to insurance, the circuit court noted appellee's testimony that she *might* receive coverage if she worked full-time and that, if available, appellee did not know how much it would cost. It is simply not true that the court failed to consider the issue of insurance. The circuit court did not abuse its discretion in this regard.

■ Next, appellant contends that the circuit court erred by failing to take into account the fact that he was made responsible for the marital debt and that he was supporting their sons through college. He argues that, while his income is substantial, it is reduced by these expenses. Appellant acknowledges that he is under no legal obligation to support their adult sons, but he points out that sending their sons to college was a joint decision that he and appellee had made. In making this argument, appellant maintains that the facts of this case resemble those found in *Whitworth v. Whitworth,* 2009 Ark. App. 410, 319 S.W.3d 269. In *Whitworth,* the husband earned a little over $100,000 a year; the circuit court granted the husband custody of a minor child; the husband paid college expenses for an adult child; and he made the house payment and car payments for himself and the children. On appeal, we observed that the evidence would have supported an award of alimony to the wife, but we affirmed the circuit court's denial of alimony, noting that the husband's financial situation was not as robust as his salary alone would indicate. Here, however, appellant earns more than twice as much as Whitworth, and appellant does not have a minor child to support. Although in *Whitworth* consideration was given to Whitworth's support of a child in college, we did not imply that a circuit court falls into error by failing to give credit for paying college expenses. Our law is settled that, unless a child is disabled, a parent's duty of support ceases when a child turns eighteen or graduates from high school. *Bagley v. Williamson,* 101 Ark.App. 1, 269 S.W.3d 837 (2007). Like the circuit court, our view is that appellant's support of their sons in college is purely a voluntary decision on his part. Moreover, the debt that appellant is being required to pay consists of his truck payment and his own credit cards. We see no

parallel between this case and our decision in *Whitworth*. More importantly, each case stands on its own facts, *Pearce v. Pearce*, 2010 Ark. App. 532, 376 S.W.3d 512, and our duty on appeal is to apply our standard of review to determine if the circuit court abused its discretion in light of the facts in this particular case. *See Whitworth*, *supra*. In sum, we find no merit in this argument.

 Appellant's final point on appeal is that the trial court should have ordered rehabilitative alimony as opposed to permanent alimony. Rehabilitative alimony is alimony that is payable for a short, specified duration of time. *Page v. Page*, 2010 Ark. App. 188, 373 S.W.3d 408. The primary purpose of rehabilitative alimony is to afford the recipient a specific period of time in which to become self-supportive. *Id.* The parties in this case are in their mid-fifties and are divorcing after a long-term marriage. Appellant has a high-paying job, and during the marriage, the parties enjoyed a comfortable lifestyle. On the other hand, appellee's best earning potential is limited to an eleven-dollar-per-hour job. Given the parties' ages, their respective earning capacities, the length of the marriage, and their married lifestyle, we can find no abuse of discretion in the trial court's decision not to limit the duration of the alimony award. As observed by the circuit court, appellant can seek modification of the award should there be a change in circumstances.

Affirmed.

VAUGHT, C.J., and GRUBER, GLOVER, and BROWN, JJ., agree.

HART, J., dissents.

JOSEPHINE LINKER HART, Judge, dissenting.

How can anything so wrong end up so right? I agree with the majority—and Mr. Vigneault—that the trial court erred in improperly using the child-support chart to fix the amount of alimony. Given that the alimony award was based on such a fundamental error, this case should have been reversed and remanded to the trial court. It is axiomatic that appellate jurisdiction does not permit this court to retry cases or make findings of fact. *Farmers Union Mut. Ins. Co. v. Robertson*, 2010 Ark. 241, 370 S.W.3d 179; *Looper v. Madison Guar. Sav. & Loan Ass'n*, 292 Ark. 225, 227–28, 729 S.W.2d 156, 157 (1987). Yet the majority has chosen to invade the province of the trial court and engage in fact finding, ultimately concluding that the amount of alimony levied against Mr. Vigneault was "reasonable." One might ask how the majority could do this. It is obvious to me that the answer is: "poorly."

One would hope that once the majority had made the decision to invade the province of the trial court, they would at least do so with a measure of circumspection. However, the majority was no more heedful of the applicable case law than the trial court. To be sure, the majority cites the axiomatic rule that "the primary factors in determining alimony are the financial need of one spouse and the other spouse's ability to pay."[1] However, it fails to properly analyze either prong. This failure is particularly egregious in that Mr. Vigneault clearly argues that the award made to his ex-wife exceeded her stated need for alimony and failed to adequately take into account his ability to pay!

Though I am loathe to engage in the very conduct that I deride, I have to agree

---

1. The majority ascribes this point of law to *Boudreaux v. Boudreaux*, 2009 Ark. App. 685, 373 S.W.3d 329; however, it could have lifted the same language from any of the eighteen other alimony cases that this court decided in the last two years.

with Mr. Vigneault that the trial court erred in ignoring Ms. Vigneault's stated needs. He asserts that the amount of alimony that the trial court awarded, $4506.50 per month,[2] plus the trial court's finding of $1577 imputed income, greatly exceeds Ms. Vigneault's stated needs as set out in her trial exhibit, captioned "Estimated Alimony Needed," which lists appellee's post-divorce financial needs. In that document, Ms. Vigneault stated that she needed only $4850.00 per month. I submit that even that figure cannot withstand even the most cursory scrutiny. The most questionable line item is $386 in "retirement *savings*." The trial court already awarded Ms. Vigneault a most generous share of Mr. Vigneault's retirement.

Other aspects of the needs analysis, or lack thereof, are equally troubling. Regarding Mr. Vigneault's argument that the trial court erred in calculating the amount of imputed income, I do not think there is any question that the trial court's figure of $1577 is wrong, as is, interestingly enough, the majority's. Ms. Vigneault testified that she turned down full-time employment as a phlebotomist where she was offered a *starting salary* of $11.38 per hour. If one were to multiply $11.38 by 40 hours per week and multiply that total by 4.334, as stated in Administrative Order 10 to get a monthly total, the gross imputed income would be $1972.84—neither the $1820 suggested by the majority, nor the $1577 that the trial court computed. Importantly, none of these figures include the $150 per week that Ms. Vigneault *claimed* to have realized from her beauty shop, which in part reflects her forty-percent cut of her employee's gross. It is simply wrong for the majority to excuse the trial court's figures by guessing that the trial court must have been figuring net income when it concluded that the trial court's figures were close enough. The majority failed to apprehend that part of Ms. Vigneault's stated "needs" was for Mr. Vigneault to pay her taxes!

As far as not discounting Ms. Vigneault's purported "need" for health insurance as some kind of failure of proof, Ms. Vigneault admitted that she would have been entitled to employer-provided insurance had she accepted the phlebotomist job at a hospital. While it is true Mr. Vigneault did not pin Ms. Vigneault down to a specific dollar value of the benefit, it is not equitable for the majority to conclude it was worthless. Also not sufficiently explored was Ms. Vigneault's beauty-shop income. She claimed that she earned only $150 per week, a claim that is belied by documentary evidence that her business account grew by thousands of dollars during the pendency of the divorce. Now I do not mean to suggest that this court engage in credibility determinations, but I mention this problem as a final reason to support my primary premise: this case cried out for fact-finding that was simply not accomplished at the trial court level. After all, because the trial judge set alimony by erroneously applying the Arkansas Child Support Guidelines, which does not factor in the payee's income, the trial judge had little reason to determine the credibility of Ms. Vigneault's testimony with regard to

---

**2.** Incredibly, the majority asserts in its hastily-written footnote that Mr. Vigneault makes no argument on appeal contesting the propriety of the so-called lump-sum award. Suffice it to say that Mr. Vigneault added a prorated share of the $8,634 to the regular monthly alimony award of $3,787 to arrive at the $4,506.50 per month that he criticizes on appeal. Contrary to the assertions of my mathematically-challenged colleagues, I did not "artificially inflate" the alimony award—on a monthly basis, $4,506.50 is *exactly* what Ms. Vigneault was awarded. I merely acknowledged and examined Mr. Vigneault's argument on appeal, as had heretofore been this court's practice.

her income. We should have sent it back for the trial judge to do her job.