Cite as 2020 Ark. App. 159

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-19-458

| | | |
|---|---|---|
| | | **Opinion Delivered:** March 4, 2020 |
| BRIAN SETH MEDLEN | | |
| | APPELLANT | APPEAL FROM THE CLAY COUNTY CIRCUIT COURT, EASTERN DISTRICT [NO. 11PDR-18-44] |
| V. | | |
| | | HONORABLE RALPH WILSON, JR., JUDGE |
| APRIL LYNN MEDLEN | | |
| | APPELLEE | AFFIRMED |

**KENNETH S. HIXSON, Judge**

This is a divorce case, and the only issue on appeal involves alimony. In a divorce decree entered on February 11, 2019, the trial court ordered appellant Brian Seth Medlen to pay appellee April Lynn Medlen permanent alimony of $400 a month. Brian now appeals, arguing that the trial court abused its discretion in awarding April permanent alimony. We affirm.

The parties were married in Alabama in August 2008. One son, a special-needs child named B.M., was born of the marriage in February 2010. The parties lived in Alabama from the time of their marriage until 2015, when they relocated to Piggott, Arkansas.

On May 8, 2018, April filed a complaint for divorce. Among other things, April's complaint requested temporary and final alimony. Brian filed an answer denying that April should be awarded alimony, and he also filed a counterclaim for divorce.

On June 27, 2018, the trial court entered a temporary order awarding the parties joint custody of the child. Neither party was ordered to pay child support. The temporary order awarded April $350 a month in temporary alimony and also provided that April would continue to be the representative payee of the child's monthly $750 Social-Security disability check.

The final divorce hearing was held on January 10, 2019. At the time of the final hearing, both April and Brian had moved to Little Rock, Arkansas.

April testified that she worked prior to the parties' marriage but that after their son was born, the parties agreed that she would not work. April stated that their son is autistic and nonverbal and that Brian, who is a schoolteacher, agreed that she should be a stay-at-home mother. April acknowledged that she had worked for Mary Kay for a brief period before B.M. was born, and that she also worked there part time during different periods after B.M. was born. In addition, April stated that after B.M. was born, she was able to sporadically earn money doing such things as selling communications from home, managing rental properties, and working for an organization called PAWS. April did not have a job at the time of the parties' separation. April also stated that she does not have a college degree.

April testified that she now lives in Little Rock and is employed by Shackleford Veterinary Clinic earning $12.75 an hour. April stated that she works full time and on Saturdays during the two-week periods that she does not have custody of B.M., and that during those periods her net biweekly pay is about $600. April stated that she works half days during the two-week periods that she does have custody of B.M., and that during those periods her net biweekly pay is about $400. April testified that her total monthly income from work, B.M.'s Social-Security disability check, and temporary alimony is significantly less than her monthly expenses.

April testified that she was seeking alimony and wanted Brian to continue paying $350 a month. April was asked, "And that would allow you to hopefully get back on your feet?" April replied, "For a while, yes sir."

Brian testified that he is a school teacher in Little Rock and that his gross annual pay is $45,000. Brian indicated that he had earned significantly more than that at previous school-teaching jobs during the parties' marriage. Brian stated that he took a $10,000 pay cut when the parties moved from Alabama to Piggott, and that he took another pay cut when he moved from Piggott to Little Rock.

Brian testified that he has a master's degree in administration, which would allow him to be a principal. Brian stated that he has applied for better employment. Brian also stated that he is taking classes for certification in special education, but that he was pursuing the certification to benefit his son and did not think it would significantly increase his income.

3

Brian stated that prior to the parties' marriage, he was involved in a car accident and suffered a traumatic brain injury. Brian stated that as a result of this injury, he has "processing issues" and that "it takes [him] a little longer to understand." Brian also stated, however, that this has not affected his employment or ability to care for his son.

Brian testified that pending the outcome of the divorce proceedings, he had been paying the $687 mortgage on the parties' marital home in Piggott and the $761 mortgage on the parties' rental home in Alabama. Brian testified that he receives $995 in monthly rent for the Alabama home but that the extra money is used to cover expenses such as home repairs. Brian stated that he is renting a house in Little Rock and that his monthly rent payment is $1435.

Brian pays child support for a sixteen-year-old daughter from a prior relationship. Brian stated that this child-support obligation will terminate in nine months when a $12,000 lump-sum payment becomes due.

Brian testified that his monthly expenses exceed his income. He stated that his $45,000 salary is "nowhere close" enough to pay the bills.

At the conclusion of the final hearing, the trial court stated that it was granting Brian's counterclaim for divorce, and the court made the following pronouncement from the bench concerning alimony:

> As far as alimony is concerned, the purpose of alimony is to rectify the imbalance and earning power and standard of living of the divorcing parties in light of the particular facts and circumstances of each case. The primary factor, as the attorneys know, is the need of one party and the ability of the other party to pay. Secondary factors include the extent and nature of income, current and anticipated. The

4

extent and nature of . . . resources and assets available to each of the parties. The earning ability and capacity of both parties and the disposition of . . . jointly owned property. Also, [a] secondary factor is the length of the marriage, in this case it's . . . almost ten and a half years. In assessing and considering the factors, the Court sets alimony from [Brian] to [April] in the sum of $400 a month[.]

The trial court entered a divorce decree on February 11, 2019, wherein it made these findings with respect to alimony:

In regard to alimony, the Court finds that the purpose of alimony is to rectify economic imbalance of the earning power and standard of living to the parties. The Court also considers the other factors including but not limited to the financial circumstances of the parties, the value of jointly owned property, the amount and nature of the parties' income, both current and anticipated and the earning ability and capacity of the parties. After consideration the Court orders that [Brian] pay [April] alimony in the amount of $400.00 per month.

The trial court ruled that the alimony would cease if April remarried or began living with another person in an intimate relationship. Other provisions in the divorce decree included the parties sharing joint custody of the child; neither party paying child support; Brian maintaining health insurance for the child; April remaining the representative payee of the child's $750 monthly Social-Security disability check; both of the marital homes sold and the proceeds divided; Brian's retirement accounts divided; and the division of the parties' personal property.

In this appeal, Brian argues that the trial court erred in awarding permanent alimony to April. The decision to grant alimony lies within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Dozier v. Dozier*, 2014 Ark. App. 78, 432 S.W.3d 82. A trial court abuses its discretion when it exercises its discretion improvidently, or thoughtlessly and without due consideration. *Id.*

5

The purpose of alimony is to rectify the economic imbalance in the earning power and standard of living of the divorcing parties in light of the particular facts of each case. *Spears v. Spears*, 2013 Ark. App. 535. The primary factors to consider are the financial need of one spouse and the other spouse's ability to pay. *Id.* Other factors include the financial circumstances of both parties; the couple's past standard of living; the value of jointly owned property; the amount and nature of the income, both current and anticipated, of both parties; the extent and nature of the resources and assets of each party; the amount of each party's spendable income; the earning ability and capacity of both parties; the disposition of the homestead or jointly owned property; the condition of health and medical needs of the parties; and the duration of the marriage. *Id.* In addition, a wife's homemaker status is an appropriate factor to consider in awarding alimony. *Foster v. Foster*, 2016 Ark. 456, 506 S.W.3d 808. The amount of alimony has never been reduced to a mathematical formula because the need for flexibility outweighs the need for relative certainty. *Page v. Page*, 2010 Ark. App. 188, 373 S.W.3d 408. If alimony is awarded, it should be set in an amount that is reasonable under the circumstances. *Id.*

An award of permanent alimony is authorized under Ark. Code Ann. § 9-12-312(a)(1) (Supp. 2019), which provides that when a divorce decree is entered, the trial court may enter an order concerning alimony as is "reasonable from the circumstances of the parties and the nature of the case." *Foster, supra.* Rehabilitative alimony is alimony payable for a short, specified duration of time. *Vigneault v. Vigneault*, 2010 Ark. App. 716, 379 S.W.3d 566. Our courts have used the same factors and conducted the same analysis

6

in determining the appropriateness of an award of permanent alimony or rehabilitative alimony. *See Rawls v. Yarberry*, 2018 Ark. App. 536, 564 S.W.3d 537. The purpose of alimony is to rectify the economic imbalances in earning power and standard of living in light of the particular facts in each case. *Id.*

Brian argues that permanent alimony should not have been awarded because April did not demonstrate the financial need, and Brian has the inability to pay. Brian asserts that April is healthy and has no major medical expenses. He further asserts that April is employed and has the ability to earn considerably more income at other jobs. Brian also notes that April is receiving a $750 monthly Social-Security disability check on their child's behalf. In her testimony, April indicated that she was seeking only temporary alimony. Based on this evidence, Brian concludes that April does not have a need for permanent alimony.

Brian also contends that even if April does need permanent alimony, the evidence showed that he lacks the ability to pay it. Brian asserts that he makes only a modest salary as a school teacher. He also notes that he suffered a traumatic brain injury prior to the parties' marriage. Brian states further that his monthly rent is $1435, that he pays for B.M.'s health insurance, and that he is still paying child support for his older child from a prior relationship. Brian claims that his monthly expenses exceed his income. Brian argues that when considering the relative financial positions of the parties and the relatively short duration of the parties' ten-year marriage, the trial court's permanent-alimony award was an abuse of discretion.

7

Based on the evidence presented, we do not agree that the trial court erred in awarding $400 in permanent monthly alimony to April. Although Brian contends that April is capable of earning "considerably more" income than she does at present, this is not supported by the proof. The testimony instead showed that after B.M. was born in 2010, the parties agreed that April would be a stay-at-home mom to care for him. April engaged in only sporadic employment during the remainder of the marriage, during which time the family was supported by Brian's sustained full-time employment as a school teacher. At the time of the parties' divorce, April was an hourly employee making $12.75 an hour, while Brian earned a $45,000 salary. Moreover, there was evidence that Brian's earning potential is higher than his current salary given that he had worked at a significantly higher salary at previous teaching jobs and has a master's degree that qualifies him to be a school principal. April, on the other hand, does not have a college degree or any sustained career employment. Although Brian suffered a traumatic brain injury years ago, it did not affect his employment throughout the parties' marriage. And while Brian is paying child support for an older child, the record shows that this support obligation will soon cease.

This court and the supreme court have emphasized that the trial court is in the best position to view the needs of the parties in connection with an alimony award. *See, e.g.,* *Taylor v. Taylor*, 369 Ark. 31, 250 S.W.3d 232 (2007); *Dozier*, 2014 Ark. App. 78, 432 S.W.3d 82. In reviewing an alimony award, our role is simply to determine whether the trial court abused its discretion. *Dozier, supra.* We are not to substitute our judgment for

8

that of the trial court. *Id.* On this record, we cannot say that the alimony award was an abuse of the trial court's discretion.[1]

Finally, we observe that as part of his argument, Brian also asserts that the trial court abused its discretion by failing to fully consider all the relevant factors bearing on alimony. We disagree.

Brian cites *Halk v. Halk*, 2009 Ark. App. 803, for the proposition that to simply award or deny alimony without explanation is an abuse of discretion when a review of the record indicates that factors were overlooked by the trial court. However, that case is readily distinguishable. In *Halk*, we reversed the trial court's denial of the appellant wife's request for alimony, and we explained:

> We hold that the circuit court's decision to completely deny alimony to appellant was an abuse of discretion. In the decree, the circuit court simply denied appellant's request for alimony without any further explanation. Our review of the record indicates several factors that we are left to conclude were overlooked by the circuit court in deciding to deny appellant's request for alimony. At the time the decree was entered, appellant was sixty-four years old. The parties were married for forty-five years. Appellant's uncontradicted testimony was that for the duration of the marriage, she did not work at the insistence of appellee. Appellant indicated in her financial-means affidavit that she has no income. Furthermore, appellant has a medical condition that has resulted in substantial ongoing medical expenses. As noted above, the primary purpose of alimony is to rectify any imbalance in the parties' earning power and standard of living. Under the facts of this case, the denial of alimony to appellant was an abuse of discretion. Therefore, we reverse the circuit court on its refusal to award alimony to appellant and remand the matter back to the circuit court to enter an award of alimony to appellant based upon a consideration of the above-mentioned factors.

---

[1]Because alimony is always subject to modification, Brian could seek a modification of the award should there be a change in circumstances. *See Nelson v. Nelson*, 2016 Ark. App. 416, 501 S.W.3d 875; *Vigneault*, 2010 Ark. App. 716, 379 S.W.3d 566.

*Halk*, 2009 Ark. App. 803, at 3–4.

In the instant case, the trial court's comments from the bench and its findings in the divorce decree indicated that it properly exercised its discretion and considered the relevant factors in reaching its alimony decision. These factors included the parties' financial circumstances, their income and earning capacity, and the duration of the parties' marriage. And as stated previously, based on the facts presented we conclude that the trial court's alimony award was not an abuse of discretion.

Affirmed.

WHITEAKER and MURPHY, JJ., agree.

*Owens, Mixon & Heller, P.A.*, by: *Haley Smith* and *W. Lance Owens*, for appellant.

*B. Neal Burns, PLLC*, by: *Neal Burns*, for appellee.