2011 Ark. App. 201

Christopher George STOUT, Appellant

v.

Pheth STOUT, Appellee.

No. CA 10–827.

Court of Appeals of Arkansas.

March 9, 2011.

Vanessa Kinney, Russellville, for appellant.

John Paul Verkamp, Charleston, for appellee.

RAYMOND R. ABRAMSON, Judge.

Christopher and Pheth Stout were married on January 10, 2004. The parties have one child, D.S., born October 7, 2003, and Pheth has a child from a previous relationship, K.P. On July 16, 2009, Christopher filed for divorce, seeking joint custody of D.S. Pheth filed an answer and counterclaim for divorce, seeking custody of D.S., child support, and spousal support. Both parties subsequently amended their pleadings twice.

Pheth's second amended counterclaim, filed on February 9, 2010, requested, in part, custody of D.S., subject to reasonable visitation by Christopher and that Christopher pay the transportation costs associated with visitation;[1] spousal support; equitable division of the property; the return of some separate personal property; and permission to move to Aland, Finland.

On February 11, 2010, Christopher filed his second amended and substituted complaint for divorce, seeking custody of D.S. This complaint alleged that he should be awarded custody of D.S. because Pheth (1) had refused him any meaningful visitation with D.S. since the separation; (2) had refused to allow visitation via telephone; (3) had refused to communicate with him regarding the child and refused to answer his telephone calls; (4) had refused to keep him apprised of her current contact information; (5) did not have the resources to provide for the primary care of the minor child; and (6) had requested authority to move the child to Finland, which would prevent him from exercising visitation.

A hearing was held on March 11, 2010. After hearing the testimony of Christopher and Pheth, as well as Christopher's mother, the trial court awarded Christopher the divorce but awarded Pheth custody of D.S. Christopher was ordered to assume the cost of transportation for purposes of visitation. Christopher was also ordered to pay child support retroactive to the date the initial complaint was filed. The trial court denied Pheth's request for alimony. The trial court then awarded each party the personal property currently in their

1. During the pendency of these proceedings, Christopher was temporarily in California for work and was awaiting transfer back to Arkansas. Pheth resides in Ft. Smith, Arkansas.

possession. Christopher was awarded possession of a Mercedes titled in his name and the responsibility to pay the debt thereon. Pheth was found to be responsible for a debt owed on the vehicle she had purchased after the separation, her student loan debt, a debt owed to World Acceptance Corp., and a debt owed to her mother. Christopher was ordered to pay the remaining California debt as well as the personal debt he had listed in an exhibit. Christopher was further ordered to pay Pheth $500 for her one-half portion of marital property he sold after their separation. Finally, the trial court awarded Pheth attorney's fees in the amount of $2,000. Christopher timely appealed the decree of divorce.

For Christopher's first point on appeal, he argues that the trial court erred in awarding custody of D.S. to Pheth because doing so was not in the best interest of the child. He points to several facts to support his assertion: (1) that Pheth admittedly allowed D.S. unsupervised visits with an ex-boyfriend who had been physically violent towards her in the past; (2) that Pheth failed to provide him with her telephone number so that he could maintain contact with D.S.; (3) that she moved without informing him of her new address; (4) that Pheth believed six-year-old D.S. should decide if he wanted to visit his father; (5) that Pheth lived in a two-bedroom home with her two children and her mother; (6) that Pheth had previously requested permission, and would like in the future, to move to Finland; (7) that Pheth had not had stable employment until shortly before the hearing; (8) that there was evidence that Pheth and her mother had tempers and had been involved in physical altercations; (9) that there was evidence that Pheth had asked her ex-boyfriend to kill him; (10) that Pheth had slapped him during an altercation; (11) that Pheth had had three children by three different men,

one of which she gave up for adoption; (12) that Pheth intended for her mother to keep the children even though her mother spoke limited English and would not be able to effectively call for help in cases of emergency; and (13) that Pheth had failed to facilitate any in-person visitation since the separation.

Additionally, Christopher asserts that he is in a better position to have custody of D.S. because (1) he lives alone in a three-bedroom house; (2) he has had steady employment, which permits him to work from home at times; (3) he has family and friends who would be willing to care for D.S. in the event he had to go into the office; (4) he had taken an active role in D.S.'s life up until the date of separation; (5) he would be willing to work with Pheth to have additional contact with D.S.; and (6) Pheth believes he should bear the greater economic burden in the divorce.

Pheth, on the other hand, contends that the trial court's award was correct. She questions Christopher's concern for the well-being of his child, as the evidence showed that he failed to provide any support for the child since he filed for divorce in July 2009. She also asserts that Christopher has a temper. She further notes that she is with the children all the time, and that she works nights so that she can be at home when the children are at home. When she is working, the children are cared for by her mother. Additionally, Pheth points to D.S.'s attachment to his half-sister and his stellar performance in school as supporting the court's determination that she should retain custody of the child. Finally, Pheth denies many of Christopher's allegations, including the allegations of physical altercations with her mother and gambling.

We review child-custody cases *de novo*, but we will not reverse a circuit

court's findings unless they are clearly erroneous. *Ross v. Ross,* 2010 Ark. App. 497, 2010 WL 2404168. A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Ford v. Ford,* 347 Ark. 485, 65 S.W.3d 432 (2002). Because the question of whether the circuit court's findings are clearly erroneous turns largely on the credibility of the witnesses, we give special deference to the superior position of the trial judge to evaluate the witnesses, their testimony, and the child's best interest. *Sharp v. Keeler,* 99 Ark. App. 42, 256 S.W.3d 528 (2007). There are no cases in which the superior position, ability, and opportunity of the trial judge to observe the parties carry as great a weight as those involving minor children. *Bailey v. Bailey,* 97 Ark. App. 96, 244 S.W.3d 712 (2006). The primary consideration in child-custody cases is the welfare and best interests of the child involved; all other considerations are secondary. *Hicks v. Cook,* 103 Ark. App. 207, 288 S.W.3d 244 (2008).

We note that the trial court did not make specific findings of fact in this case and that Christopher did not specifically request such findings pursuant to Rule 52 of the Arkansas Rules of Civil Procedure. While it is true that our review is *de novo,* the lack of specific findings, particularly in regard to the disputed points and the credibility of witnesses, makes our review more difficult. It should be noted that absent specific findings, we presume that the trial court acted properly and made the findings necessary to support its judgment. *Tillery v. Evans,* 67 Ark. App. 43, 991 S.W.2d 644 (1999); *Jocon, Inc. v. Hoover,* 61 Ark. App. 10, 964 S.W.2d 213 (1998).

Here, the trial court heard all the evidence (including the evidence recited by Christopher for reversal), assessed the credibility of the witnesses, and determined that allowing Pheth to retain custody of the child was in D.S.'s best interest. Even if we might have decided this case differently, given our presumption that the trial court acted appropriately absent any specific findings and based on the record before us, the trial court's decision awarding custody to Pheth is not clearly erroneous.

Christopher next argues that the trial court erred when it established an unreasonable visitation schedule given his current residence in California. Again, our review is *de novo* and we will not reverse the trial court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Brown v. Brown,* 76 Ark. App. 494, 68 S.W.3d 316 (2002). The main consideration in making judicial determinations concerning visitation is the best interest of the child. *Id.* Important factors to be considered in determining reasonable visitation are the wishes of the child, the capacity of the party desiring visitation to supervise and care for the child, problems of transportation and prior conduct in abusing visitation, the work schedule or stability of the parties, and the relationship with siblings and other relatives. *Marler v. Binkley,* 29 Ark. App. 73, 776 S.W.2d 839 (1989). The fixing of visitation rights is a matter that lies within the sound discretion of the trial court. *Davis v. Davis,* 248 Ark. 195, 451 S.W.2d 214 (1970).

Here, the trial court entered a standard visitation order even though Christopher currently resides in California. Doing so was an abuse of discretion. Although it appears the visitation schedule was set under the assumption that Christopher's stay in California was only temporary, there was no evidence presented regarding if or when he would actually

obtain a transfer. Given Christopher's current residence, there is no conceivable way the visitation order can be followed as set and denies Christopher and D.S. any meaningful opportunity for visitation to maintain their relationship, such as by telephone or extended summer visitation. There was no evidence presented that visitation would, in any way, be harmful to D.S. To essentially deny D.S. reasonable visitation with his father when there is no reason to do so would be contrary to the child's best interest. Thus, this matter must be remanded to the trial court for entry of a revised order of visitation.

■ Christopher also complains that the trial court erred in charging him with the cost and responsibility for transporting D.S. during visitation. Again, absent specific findings, we must presume that the trial court acted properly and made the findings necessary to support its judgment. In light of the existing economic differences between the parties, there is no clear error in the trial court's determination that, on the whole, Christopher should be responsible for the transportation costs of visitation.

■ Christopher's third argument is that the trial court erred when it divided the parties' assets and split the parties' debts unequally. As for the inequitable property distribution, Christopher takes issue with the trial court's disposition of their Mercedes (and its corresponding debt) and its order compelling him to reimburse Pheth for half of the money he received for selling some of their furniture.

As for his argument regarding the car, the testimony at the hearing revealed that the Mercedes was titled in Christopher's name. He stopped making payments and paying for insurance on that vehicle in November 2009. He contended that he was willing to sign the car over to Pheth but that she would have to take the car to California to pass an emissions test before he could do so. Instead of taking the Mercedes, Pheth purchased another vehicle. The trial court awarded the Mercedes to Christopher and the other vehicle to Pheth. Both parties were ordered to pay the respective debts on those vehicles.

As for the court's order regarding the proceeds from the sale of furniture acquired during the marriage, Christopher argues that he sold the property because he could not afford the storage costs. He further argues that the court should have given him credit for the storage fees he would have owed if he had not sold the furniture. However, the fact remains that he did not expend those funds and the furniture was clearly marital property.

■ We will affirm a trial court's division of property and allocation of debt unless the decision is clearly erroneous. *Farrell v. Farrell*, 365 Ark. 465, 469, 231 S.W.3d 619, 622 (2006); *Evtimov v. Milanova*, 2009 Ark. App. 208, at 10, 300 S.W.3d 110, 117. A finding is clearly erroneous when, after reviewing the entire evidence, the appellate court is left with the firm conviction that a mistake has been made. *Farrell*, 365 Ark. at 469, 231 S.W.3d at 622. We give due deference to the trial court's superior position to weigh the evidence and determine the credibility of the witnesses before it. *Id.*

In reviewing this decision, we also note that Ark.Code Ann. § 9–12–315 does not compel mathematical precision in the distribution of property; it simply requires that marital property be distributed equitably. *Creson v. Creson*, 53 Ark. App. 41, 917 S.W.2d 553 (1996). Rather, the statute vests the trial court with a measure of flexibility and broad powers in apportioning property, nonmarital as well as marital, in order to achieve an equitable distri-

bution; the critical inquiry is how the total assets are divided. *Id.* This court will not substitute its judgment on appeal as to the exact interest each party should have but will only decide whether the order is clearly wrong. *Williams v. Williams,* 82 Ark. App. 294, 108 S.W.3d 629 (2003). On our review of the record in this case, we cannot say that the trial court's order as to the division of property is clearly wrong.

Christopher's primary argument regarding the trial court's "inequitable division" revolves around the trial court's allocation of debt. He first argues that the trial court inequitably divided the marital debts without providing findings under Ark.Code Ann. § 9–12–315(a)(1)(A) (Repl.2009). However, section 9–12–315 does not apply to the division of marital debts; hence, in Arkansas, there is no presumption that an equal division of debts must occur, nor is there a requirement to make findings explaining an unequal division. *Ellis v. Ellis,* 75 Ark. App. 173, 57 S.W.3d 220 (2001). In *Ellis,* the trial judge divided the marital property equally and ordered the husband to pay seventy percent of the marital debts. There, we affirmed the judge's unequal division of the marital debts due to the disparity between the parties' incomes and their relative abilities to pay the debts.

Although the division of marital debt is not addressed in Ark.Code Ann. § 9–12–315 (Repl.2009), the trial judge has authority to consider the allocation of debt in a divorce case. *Williams v. Williams,* 82 Ark. App. 294, 108 S.W.3d 629 (2003). In fact, an allocation of the parties' debt is an essential item to be resolved in a divorce dispute. *Id.* It must be considered in the context of the distribution of all of the parties' property. *Id.* A judge's decision to allocate debt to a particular party or in a particular manner is a question of fact and will not be reversed on appeal unless clearly erroneous. *Id.* When considering the allocation of debt, it is also appropriate that the judge consider who should equitably be required to pay it. *Id.* In fact, it is not error to determine that debts should be allocated between the parties in a divorce case on the basis of their relative ability to pay. *Id.*

Here, the trial court had before it evidence of the parties' incomes and their respective abilities to pay. After considering the evidence, the trial court divided the debt as set forth in the decree. We give due deference to the trial court's superior position to weigh the evidence before it, and, on this record, we cannot say that the trial court's award was clearly erroneous. Finally, Christopher contends that the trial court erred in awarding attorney's fees to Pheth. The circuit court has the inherent power to award attorney's fees in domestic-relations proceedings, and whether the circuit court should award fees and the amount thereof are matters within the discretion of the circuit court. See *Miller v. Miller,* 70 Ark. App. 64, 14 S.W.3d 903 (2000). In making this determination, the circuit court must consider the relative financial positions of the parties. *Jablonski v. Jablonski,* 71 Ark. App. 33, 25 S.W.3d 433 (2000). But while disparity in incomes is a relevant factor for the circuit court to consider, standing alone, it will not justify an award of attorney's fees. *Davis v. Williamson,* 359 Ark. 33, 194 S.W.3d 197 (2004).

In awarding attorneys' fees, the circuit court may use its own experience as a guide and can consider the types of factors set forth in *Chrisco v. Sun Industries, Inc.,* 304 Ark. 227, 800 S.W.2d 717 (1990); [2]

---

**2.** The *Chrisco* factors to be considered by the trial court are: (1) the experience and ability of the attorney; (2) the time and labor required to perform the legal services properly;

but, it need not conduct an exhaustive hearing on the amount of attorney's fees because it has presided over the proceedings and gained familiarity with the case and the services rendered by the attorney. *See Paulson v. Paulson,* 8 Ark. App. 306, 652 S.W.2d 46 (1983). Further, this court has not strictly required documentation of time and expense in a divorce case where the circuit court has the opportunity to observe the parties, their level of cooperation, and their obedience to court orders. *See Deaton v. Deaton,* 11 Ark. App. 165, 668 S.W.2d 49 (1984).

However, in the case at bar, the trial court awarded attorney's fees without any discussion whatsoever and without providing any pertinent analysis of the *Chrisco* factors. If a trial court fails to consider the *Chrisco* factors when awarding the attorney's fees, we reverse and remand for the trial court to make such an analysis. *See Bailey v. Rahe,* 355 Ark. 560, 142 S.W.3d 634 (2004); *South Beach Beverage Co. v. Harris Brands, Inc.,* 355 Ark. 347, 138 S.W.3d 102 (2003); *see also Lake View Sch. Dist. No. 25 v. Huckabee,* 351 Ark. 31, 91 S.W.3d 472 (2002). Because there is no evidence that any such analysis took place in this case, we reverse and remand the fee award for proper consideration of the *Chrisco* factors.

Affirmed in part; reversed and remanded in part.

GLOVER and HOOFMAN, JJ., agree.

(3) the amount involved in the case and the results obtained; (4) the novelty and difficulty of the issues involved; (5) the fee customarily charged in the locality for similar legal services; (6) whether the fee is fixed or contingent; (7) the time limitations imposed upon the client or by the circumstances; and (8) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.