2012 Ark. App. 290
**Douglas ELLIOTT, Appellant**

v.

**Shawna ELLIOTT, Appellee.**

**No. CA 11–853.**

Court of Appeals of Arkansas.

April 25, 2012.

Johnnie, Emberton Rhoads, Rhoads Law Firm, Rogers, for appellant.

Jane Watson Sexton, Sexton Law Firm, Fayetteville, for appellee.

RITA W. GRUBER, Judge.

The parties in this case, Shawna Elliott and Dr. Douglas Elliott, were divorced by decree entered May 5, 2011, after an eighteen-year marriage. Dr. Elliott brings four points on appeal: the trial court erred (1) in awarding Ms. Elliott alimony for an indeterminate amount of time instead of awarding rehabilitative alimony; (2) in the amount of alimony it awarded; (3) in making him responsible for all of the medical-school debt; and (4) in refusing to grant him additional visitation during his vacation weeks. We find no error and affirm the court's order.

The parties married in July 1993 after both had completed undergraduate degrees, with appellee obtaining a degree in psychology and appellant obtaining a degree to prepare him for medical school, which he began shortly thereafter. Appellee worked while appellant attended medical school until the parties' first child was born in November 1994. At that time, the parties agreed that appellee would be a stay-at-home wife and mother. The parties have one daughter and two sons who, at the time the divorce decree was entered, were sixteen, thirteen, and nine, respectively.

The parties agreed that appellee would be the primary custodian and entered into a partial property settlement agreement in which they agreed that appellant would take the marital home and the lake house, assuming the outstanding liabilities on both properties. They also agreed that each party would retain the vehicle currently in their possession, including the debt on the vehicle. They divided appellant's IRA and 401(k) accounts equally, which amounted to approximately $200,000 to each. In addition, appellant agreed to pay appellee $25,000 for her equitable interest in his medical practice. The issues of alimony, debt division, and visitation were tried to the court.

After the hearing, the trial court awarded appellee child support in the amount of $6,031.55 per month pursuant to Administrative Order No. 10, based on appellant's net take-home pay of $23,938.23 per

month. The parties agreed that appellant would provide medical insurance for the children through his place of employment so long as it could be secured at a reasonable cost. Any cost not covered by insurance was to be divided equally between the parties. The court found that appellant was solely responsible for the remaining $103,000 of medical-school debt. Finally, the court awarded appellee alimony in the amount of $5,000 per month. The court stated that the alimony "shall continue for an indefinite time subject to termination by death, remarriage or a material change in the circumstances of the parties."

The court also awarded appellant a "modified" standard visitation. He has the children on the first, third, and fifth weekends each month, to begin on Friday when the children get |₈out of school and end at the beginning of the school day on Monday morning. In the event his work schedule prevents weekend visitation, the court allowed him the following Tuesday and Wednesday nights to make up for the previous missed weekend. In addition to alternate holidays and two fifteen-day periods during the children's summer break, the court awarded him one additional week in the fall school semester and one additional week during the spring school semester but forbade appellant from removing the children from school during these breaks. Appellant filed this appeal from the court's order.

## I. *Rehabilitative Alimony & the Amount of Alimony*

We will consider appellant's arguments regarding alimony together. His principal argument is that the trial court erred in awarding appellee alimony for an indeterminate amount of time rather than awarding her rehabilitative alimony. He also argues that the court awarded too much

alimony given his income, expenses, and child-support obligation.

The purpose of alimony is to rectify the economic imbalance in earning power and standard of living of the parties to a divorce in light of the particular facts of each case. *Matthews v. Matthews*, 2009 Ark. App. 400, at 6, 322 S.W.3d 15, 19. The primary factors in determining alimony are the financial need of one spouse and the ability of the other spouse to pay. *Boudreaux v. Boudreaux*, 2009 Ark. App. 685, at 9, 373 S.W.3d 329. The trial court may also consider other factors, including the couple's past standard of living, the assets of each party, and the duration of the marriage. *Vigneault v. Vigneault*, 2010 Ark. App. 716, at 5, 379 S.W.3d 566, 569. The decision whether to award alimony is a matter that lies within the trial court's sound discretion, and on appeal, we will not reverse the trial court's |₄decision absent an abuse of that discretion. *Id.* An abuse of discretion means discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. *Id.*

Testimony and evidence at the hearing revealed that appellee submitted a monthly budget in the amount of $13,415. Appellant's monthly budget was $21,207.45. Appellant's net take-home pay was $23,938.23 per month. From the bench after the hearing, the court found that the parties had been married for over seventeen years and that appellee had not worked for sixteen years because the parties agreed that she was to be available to tend to the children. The court found "that based on her age of 43 and having no real skills, that the chance of her supporting herself at this stage in her life are pretty slim and would be very difficult." The court also found that most expenses in appellee's monthly budget were reasonable, although the court reduced auto

maintenance by $100, which was listed at $250; removed her life-insurance expense; reduced the senior trip/class ring/prom expense from $350 to $200; reduced gift expense from $225 to $150; reduced pet expense from $185 to $100; estimated the health-insurance premium expense at $400 rather than $500 as listed by appellee; and reduced the groceries/Wal-Mart/household expense from $1,200 to $1,000 "because [she] had so much in some other categories, like restaurant and entertainment." Taking into account that appellant would pay child support in the amount of $6,031.55, the court awarded alimony of $5,000, based upon the need of appellee and the ability of appellant to pay. The court ordered alimony to continue for an indefinite time subject to termination by death, remarriage, or a material change in circumstances of the parties.

Appellant argues that the trial court should not have awarded alimony for an indefinite period of time but rather should have awarded rehabilitative alimony. Rehabilitative alimony is alimony that is payable for a short, specified duration of time, the primary purpose of which is to afford the recipient a specific period of time in which to become self-supportive. *Vigneault*, 2010 Ark. App. 716, at 8, 379 S.W.3d at 570–71. Appellant claims that appellee has a bachelor's degree in psychology and worked before the parties had their first child in 1994. He contends that appellee is relatively young at 43 years old and that the children are in school each day from 7:40 a.m. until 3:30 p.m., giving her ample time to work. He argues that appellee's testimony made it clear that she had not looked for a job, had no intention of contributing to her own support, and intended to rely upon appellant to support her for the rest of her life. He claims that the court's award provides no incentive for appellee to advance her education or to explore career or employment options. Rehabilitative alimony, on the other hand, would assist appellee in making the transition back into the work place and becoming self sufficient.

Appellant also contends that $5,000 is too much given his ability to pay. Appellant's net take-home pay is $23,938.23 per month. His budget, which included a mortgage on the marital residence of $4,710, a mortgage on the lake house of $865, a medical-school loan payment of $2,000, and child support of $6,031.55, was $21,207.45, leaving a disposable income of $2,730.78. The court found that appellant had the ability to pay about $4,400, indicating that some expenses could "probably be decreased, like the mortgage on the marital residence," and that some discretionary expenses like pool maintenance, pet cost, and restaurants and entertainment seemed a bit high.

Alimony lies within the discretion of the court in light of the particular facts of each case. *Matthews*, 2009 Ark. App. 400, at 6, 322 S.W.3d at 19. In this case, the court noted that child support was not indefinite and would decrease substantially two years from the hearing when the parties' daughter turned eighteen and again when the middle child, then thirteen, turned eighteen. The court stated that "she obviously can't sit around and not do anything for ten years if she wants to maintain this current lifestyle." The court awarded approximately $2000 less than appellee's budget suggested that she needed and $2000 more than appellant's budget suggested he could pay, explaining that there were expenses that could be reduced in both budgets. Appellant earns over $500,000 per year as a radiologist. The parties have been married for eighteen years and have three children, whom they agreed that appellee would stay home to tend. While the court did not designate

the alimony as rehabilitative alimony, the court did state that it was modifiable in the event of a material change in circumstances. We give due deference to the trial court's superior position to determine the credibility of witnesses and the weight to be given their testimony. *Cummings v. Cummings,* 104 Ark.App. 315, 322, 292 S.W.3d 819, 823–24 (2009). The trial court's discretion in this case was not exercised thoughtlessly and without due consideration. *See Vigneault,* 2010 Ark. App. 716, at 5, 379 S.W.3d at 569.

## II. *Medical–School Debt*

■ For his next point on appeal, appellant contends that the trial court erred in distributing the debt unequally; specifically, he argues that he should not have been made solely responsible for the repayment of his outstanding medical-school loan, totaling $103,000. He argues that appellee benefits from this loan and his medical degree by receiving alimony and by appellant's ability to assume all indebtedness on the marital home and lake house. He claims that there should have been an unequal distribution of assets to compensate him for this unequal distribution of debt.

■ A trial court's decision to allocate debt to a particular party or in a particular manner is a question of fact, and we will not reverse the finding on appeal unless it is clearly erroneous. *Williams v. Williams,* 82 Ark.App. 294, 309, 108 S.W.3d 629, 638 (2003). While Arkansas law requires the trial court to distribute half of the parties' marital property to each party unless the court finds such a division to be inequitable, there is no presumption that an equal division of debts must occur. *Stout v. Stout,* 2011 Ark. App. 201, at 9, 378 S.W.3d 844, 849–50. Arkansas Code Annotated section 9–12–315 does not apply to the division of marital debt. *Williams,* 82 Ark.App. at 308, 108 S.W.3d at 638. The trial court has authority to consider the allocation of debt in the context of the distribution of all of the parties' property. *Id.* at 309, 108 S.W.3d at 638. The judge may consider who should equitably be required to pay the debt, and it is not error for a court to determine that debts should be allocated between the parties on the basis of their relative ability to pay. *Id.* at 309, 108 S.W.3d at 639.

Here, the marital debt was used to pay for the education of appellant, a physician earning over $500,000 per year. He earned the medical degree, and he is able to earn a significant income because of that degree. At the time of the parties' divorce, appellee had no ability to earn an amount close to $500,000 per year. Clearly, between the two of them, appellant has the ability to pay for his school loan. We hold that the court's division of appellant's medical-school debt was not clearly erroneous.

## III. *Visitation*

■ For his final point on appeal, appellant contends that the trial court erred in failing to award him additional visitation during his vacation weeks. Appellant gets ten weeks of vacation each year, the dates of which are set by his employer. During the parties' marriage, they would often take the children out of school for several of these weeks to travel. Appellant was by all accounts an active father who was involved with his children. He expressed to the court his desire to have as much time with the children as possible. He asked the court to grant him visitation during his ten weeks of vacation time and to allow him to take the children on vacation during some of that visitation.

The court denied his request to grant him visitation during all of his vacation

time, but the court did award him two extra weeks: one during the fall semester and one during the spring semester. The court forbade him, however, from removing the children from school during these extended visitation periods. Excluding holidays, this amounted to six weeks of visitation in addition to his standard weekend visitation and holiday rotation.

We review visitation de novo and will not reverse the trial court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Stout v. Stout*, 2011 Ark. App. 201, at 6, 378 S.W.3d 844, 848. The main consideration for the court in awarding visitation is the best interest of the child. *Id.*, 378 S.W.3d at 848. Fixing visitation rights is a matter that lies within the sound discretion of the trial court. *Baber v. Baber*, 2011 Ark. 40, at 10, 378 S.W.3d 699, 705.

In this case, the trial court modified the standard visitation, adding flexibility, in order to accommodate appellant's work schedule. His weekend visitation begins as soon as the children get out of school on Friday and continues until they return to school on Monday, allowing one extra overnight for each weekend visit. In addition, the court gave him flexibility to modify the two fifteen-day, summer-visitation periods if his work schedule does not allow him to take off during the visitation schedule's assigned weeks. The court also awarded him an extra week in the fall and in the spring and allowed him to set these visitations after he receives his vacation schedule each year to accommodate his work schedule. However, the court did not think it was in the children's best interest to be taken out of school for these vacations. The court considered appellant's request and his unique work schedule and deviated from its standard visitation schedule. But the court's primary consideration was not appellant's work schedule; it was the best interest of his children. We hold that the trial court did not err in establishing appellant's visitation.

Affirmed.

HART and GLOVER, JJ., agree.