KENNETH S. HIXSON, Judge
Appellant Benjamin Wilson Pratt appeals from a June 19, 2018 divorce decree filed by the Union County Circuit Court in favor of appellee Tamra Renee Pratt (now Corley). On appeal, Benjamin contends that the circuit court erred in its unequal division of the parties' marital property.[1] We affirm.
I. Facts
The parties were married on April 27, 2013, and separated on July 4, 2017. No children were born of the marriage, but Tamra's son by a prior marriage resided with the parties. Tamra is a beneficiary of a family trust that produced significant income. Benjamin was employed at a chemical plant and received some Social *513 Security disability benefits during the marriage due to diabetes and kidney complications. Tamra filed a complaint for divorce on July 7, 2017, on the grounds of personal indignities and requested the circuit court to make a distribution of the real and personal property acquired during the marriage. A trial was held on March 9, 2018.[2]
Tamra testified that she has a 10 percent interest in the Corley Trust, which distributes oil and gas royalty dividends as part of her family's oil-production company. She receives the dividends quarterly, and the amount varies based on the price of oil by the barrel. Tamra testified that Benjamin was employed at Great Lakes Chemical plant during their marriage. According to their 2013 through 2016 tax returns, Benjamin cumulatively earned $ 198,528 in gross income, including his wages and Social Security disability benefits. Comparatively, Tamra cumulatively earned $ 802,182 in gross income.
Tamra further testified that she owned a premarital residence that the parties lived in before she sold it for $ 250,000. The parties purchased their marital residence on Pleasant Oak Drive in Smackover, Arkansas, for $ 250,000 in addition to the adjacent lot for $ 30,000 that was titled in both of their names. They made some improvements to the residence, including the construction of a shop building, a fence, and a swimming pool. It was undisputed that the costs of those improvements totaled $ 81,206.10. Tamra testified that the improvements were funded by her dividend income from the Corley Trust.
Tamra additionally testified that Benjamin's father owned a home on East 10th Street in Smackover, Arkansas. Benjamin's father had a reverse mortgage on the residence. During the marriage, Tamra used her dividend income to pay off the reverse mortgage on January 14, 2016, in the amount of $ 41,167.52, and the property was deeded back to Benjamin's father. Thereafter, on February 15, 2017, Benjamin's father conveyed the property to Benjamin by warranty deed in Benjamin's name only. Tamra further used a total of $ 11,950.91 of her dividend income to improve the East 10th Street residence.
Tamra testified that she paid Benjamin's premarital debts totaling $ 6,112.18 and that she paid a total of $ 3,883.31 for credit-card charges that Benjamin made after the parties' separation. The parties further had $ 52,758.26 and $ 170,475.34 in their joint checking and savings accounts, respectively. Tamra explained that Benjamin never contributed any money to the savings account, but his payroll checks were deposited into the checking account. Tamra stated that she purchased Benjamin's new Ford F150 truck the summer after they were married. Therefore, she requested that the circuit court make an unequal division of the real and personal property that she purchased from her dividend income. She also requested that her name be restored to her former surname of Corley.
Benjamin did not dispute any of the specific amounts mentioned by Tamra. Benjamin further admitted that he did not have the funds to make all the purchases without Tamra's savings of the dividend income. Benjamin testified that he generally contested the grounds for divorce. However, he testified that if a divorce was granted, he requested that he be awarded one-half of the marital property.
*514 In its divorce decree filed on June 19, 2018, the circuit court specifically made the following findings:
4. The property issue is subdivided into four areas: real property, real property improvements, bank accounts, and personal property. Plaintiff is a beneficiary of a family trust which produced significant but variable annual income. Defendant was employed at a chemical plant and then drew social security disability benefits. The difference in their income is substantial and is a factor in the division of property. The factors in A.C.A. § 9-12-[317 (Repl. 2015) ] are applied to the facts and justify an unequal division of the property held by the entirety.
A. Real Property: This category consists of the marital home purchased July 1, 2015, for $ 250,000, an adjacent lot purchased at the same time for $ 30,000, and Defendant's father's house on East 10th Street where the parties paid off a mortgage of $ 41,000. The marital house and lot were purchased early in the marriage and title was listed in both names, creating a tenancy by the entireties. Although the purchase money came from the funds of Plaintiff [Tamra], her placement of Defendant[ Benjamin's] name on the title constitutes a gift to Defendant and creates equal ownership in properties valued at $ 280,000 and possessed by Plaintiff. Upon payment to Defendant, Plaintiff shall have title to and possession of said property.
The East 10th Street property has been owned by Defendant's father. After paying off the mortgage in early 2016, the parties put title in Defendant's name. Defendant occupies the property as his residence now.... Defendant shall have title and possession to said property.
The calculation of interest is therefore $ 250,000 + $ 30,000 = $ 280,000 - $ 41,000 = $ 239,000 ÷ 2 = $ 119,500 to each party as to the division of real property. Since the Plaintiff seeks title to the marital home, Plaintiff would owe Defendant $ 119,500 for his interest therein.
B. Improvements to Real Property: Improvements to the marital house and lot were made at a cost of $ 81,000 as set forth in Plaintiff's Exhibit 4. Improvements to the 10th Street property totaled $ 11,950. It cannot be determined that this expenditure caused a corresponding increase in the value of the property of the same amount. Therefore, the improvements are considered separately. During the four years of marriage, the parties maintained two checking accounts, into which their incomes were deposited. It is of significance that Plaintiff's contributions were approximately four times that of Defendant over the four years of marriage ($ 802,182 compared to $ 198,528). In addition, Plaintiff sold her premarital home on Line Drive in Smackover for about $ 250,000 after their marriage, and this sum was used for marital expenses. In light of the significant cash contributions of the Plaintiff, the Court will not assign any equitable interest to Defendant for these improvements to the marital home and lot. Lastly, improvements were made to the 10th Street property at a cost of $ 11,950. For the reasons set forth above, Plaintiff is entitled to a credit for this sum.
C. Checking Accounts: The balance of the parties' accounts at the time of separation was $ 227,745. Applying the approximate income percentages of 75% attributable to the Plaintiff and 25% to Defendant, division of the two accounts results in $ 170,808 to Plaintiff and $ 56,936 to Defendant.
*515 D. Other Personal Property: The furniture in the marital home shall belong to Plaintiff and the furniture in the 10th Street house shall belong to Defendant. The patio and pool furniture and equipment shall belong to Plaintiff. The tools and equipment in the shop building shall belong to Defendant who shall remove such property within a reasonable period of time. The removal shall occur at a mutually convenient time. The shelving and other fixtures in the shop shall remain in place. The parties shall have title to and possession of their respective vehicles and all other personal property currently in their possession. Plaintiff shall also have a credit for payment of Defendant's separation expenses of $ 3,883. Plaintiff's payment of Defendant's pre-marital debt of $ 6,112 is considered a gift to Defendant.
E. In summary of the property division, Plaintiff shall pay Defendant the following sum:
$119,500 - interest in real estate + $56,936 - interest in bank accounts ________ $176,436 - $3,883 - Defendant's expenses after separation - $11,950 - improvements to 10th Street ________ $160,553 - payment to Defendant
5. The property division is fair and equitable according to the guidelines of A.C.A. § 9-12-317. The parties shall bear their own attorney's fees and costs and shall execute appropriate deeds of title.
This appeal followed.[3]
II. Standard of Review
On appeal, this court reviews divorce cases de novo on the record. Taylor v. Taylor , 369 Ark. 31, 250 S.W.3d 232 (2007). Moreover, we will not reverse a circuit court's finding of fact in a divorce case unless it is clearly erroneous. Id. A circuit court's finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. Doss v. Doss , 2018 Ark. App. 487, 561 S.W.3d 348. In order to demonstrate that the circuit court's ruling was erroneous, the appellant must show that the lower court abused its discretion by making a decision that was arbitrary or groundless. Kelly v. Kelly , 2014 Ark. 543, 453 S.W.3d 655. We give due deference to the circuit court's superior position to determine the credibility of witnesses and the weight to be given their testimony. Doss , supra ; Tipton v. Tipton , 2017 Ark. App. 601, 2017 WL 5163423.
III. Property Division
Benjamin argues that the circuit court erred in unequally dividing the marital property. He first alleges that the circuit court failed to address all the factors enumerated in Arkansas Code Annotated section 9-12-315(a)(1) (Repl. 2015) as required in its written findings. He does not dispute that the circuit court properly divided *516 the marital residence (purchased for $ 250,000) and adjacent lot (purchased for $ 30,000) on Pleasant Oak Drive evenly to both parties. He further does not dispute that he was solely entitled to the home on East 10th Street or that the $ 41,000 used to pay off the reverse mortgage should be considered in calculating the amount Tamra would need to pay him in order to retain the marital residence and adjacent lot. Instead, Benjamin argues that the circuit court erred in not including the $ 81,000 used to improve the marital residence and adjacent lot in its valuation of his interest in the property. He additionally argues that the circuit court erred in awarding Tamra a credit of $ 11,950 for the funds used to improve the home on East 10th Street. He states that those funds simply should have been considered a gift to him. Finally, Benjamin argues that the circuit court erred in unequally dividing the joint bank accounts because the mere fact that Tamra placed more funds into the accounts is irrelevant. We disagree.
In accordance with Arkansas Code Annotated section 9-12-315(a)(1), at the time of entry of a divorce decree, the circuit court shall equally distribute all marital property one-half to each party unless it is determined that such a distribution would be inequitable; if the property is not divided equally, then the circuit court must state the reasons and bases for not doing so, and the bases and reasons should be recited in the order entered in the matter. Brown v. Brown , 2016 Ark. App. 172, 2016 WL 1039586. Factors to be considered by the circuit court if the marital property is not divided equally include the length of the marriage; the age, health, and station in life of the parties; the occupation of the parties; the amount and sources of income available to each party; vocational skills; employability; the estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income; contribution of each party in acquisition, preservation, or appreciation of marital property, including homemaker services; and the federal income tax consequences of the court's division of property. Ark. Code Ann. § 9-12-315(a)(1)(A).
Here, the circuit court specifically considered the short length of the marriage (approximately four years) and the contributions of each party in its unequal division of the marital property. We cannot say that the circuit court's explanation is inadequate or insufficient. While the circuit court must consider the factors set forth in the statute and state its reasons for dividing the property unequally, it is not required to list each factor in its order or to weigh all the factors equally. Kelly , supra ; Hernandez v. Hernandez , 371 Ark. 323, 265 S.W.3d 746 (2007). Furthermore, the specific enumeration of the factors within the statute does not preclude a circuit court from considering other relevant factors if the exclusion of other factors would lead to absurd results or deny the intent of the legislature to allow for the equitable division of property. Kelly, supra. The statute requires the circuit court to explain its reasons for not dividing the marital property equally, and the circuit court here did just that.
Our appellate courts have consistently interpreted section 9-12-315(a) to grant the circuit court broad powers in distributing both nonmarital and marital property to achieve an equitable division. Id. We have held that any exception to the rule of equal distribution will always depend on the specific facts as reflected by the circuit court's findings and conclusions. Doss, supra. Our property-division statute does not compel mathematical precision in the distribution of property; its overriding purpose *517 is to enable the court to make a division that is fair and equitable under the circumstances. Id. Further, it has long been held that a nonowning spouse is entitled to some benefit when marital funds have been expended to improve or reduce the debt on the other spouse's nonmarital property. Steeland v. Steeland , 2018 Ark. App. 551, 562 S.W.3d 269.
Here, it was undisputed that Tamra's income from her premarital interest in her family's trust was used to improve Benjamin's home on East 10th Street. It was also undisputed that Tamra sold her premarital residence during the marriage for $ 250,000 before purchasing their marital residence and making any improvements. The circuit court noted in the divorce decree that it could not determine whether the improvements to the marital residence and lot caused a corresponding increase in the value of the property of the same amount. Additionally, the circuit court specifically noted in the divorce decree that it considered the fact that Tamra earned 75 percent of the parties' combined income and used that percentage in dividing the bank accounts. Based on these facts, we hold that the circuit court considered and analyzed all the relevant and necessary factors to determine a fair and equitable division of the marital property. Because we cannot hold that the circuit court's ruling was clearly erroneous, we must affirm.
Affirmed.
Harrison and Brown, JJ., agree.

Although Tamra had filed a notice of cross-appeal, we granted her voluntary motion to dismiss her cross-appeal on March 7, 2019.

Much of the testimony at trial relates to Tamra's grounds for the divorce. Because Benjamin does not challenge on appeal whether the grounds for divorce were sufficient, it is unnecessary to discuss this testimony.

We note that after Benjamin filed his notice of appeal, the circuit court entered a second divorce decree nunc pro tunc to correct the omission in the first decree to restore Tamra to her former surname of Corley. The second divorce decree did not change any other findings, and although Benjamin did not amend his notice of appeal to include the second divorce decree, he does not contest the correction on appeal.